# IN THE COURT OF APPEALS OF IOWA

No. 20-0953
Filed October 7, 2020

IN THE INTEREST OF A.K. and A.K.,
Minor Children,

W.K., Father,
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Kimberly Ayotte,

District Associate Judge.


        A father appeals the termination of his parental rights to his two children.

**AFFIRMED.**


        Mark D. Reed of Marberry Law Firm, P.C., Urbandale, for appellant father.

        Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

        Will E. Sales III, Des Moines, attorney and guardian ad litem for children.


        Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

Citing the father's severe, unresolved substance-use disorder, the juvenile court terminated parental rights to two children—A.K., born in 2016, and Am.K., born in 2018.[1] The father, William, challenges the termination order on two grounds. First, he contends the State failed to prove by clear and convincing evidence the statutory grounds for termination. Second, he argues termination is not in the children's best interests. Because William has not yet addressed the serious health and safety concerns that led to the children's removal over one year ago, we affirm.[2]

## I. Facts and Prior Proceedings

The family first came to the attention of the Iowa Department of Human Services (DHS) in May 2018 based on reports that the parents were using methamphetamine while caring for their children. The DHS closed that case in December, concluding the children were safe in the parents' care. Only five months later, the DHS became involved again because the parents admitted to relapsing when A.K. and Am.K. were ages two and one respectively. After testing positive for methamphetamine in May 2019, both parents consented to temporarily placing the children with the children's uncle.

---

[1] The mother consented to the termination of her parental rights. She is not a party to this appeal.

[2] We review termination proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We give weight to the juvenile court's fact findings, but we are not bound by them. *Id.* The State has the burden to show by clear and convincing evidence the grounds to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Our primary concern is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (placing emphasis on factors such as children's safety and need for a permanent home).

Soon after, the juvenile court adjudicated A.K. and Am.K. as children in need of assistance (CINA), concluding they were at further risk of abuse and neglect under the parents' care. Due to the severity of his methamphetamine addiction, the court ordered William to participate in mental-health screening, therapy, and substance-abuse treatment. William received a substance-abuse evaluation in July 2019, which led to his diagnosis of severe amphetamine-type use disorder. At the evaluation, he told the counselor he was "living in a house where people are using all the time, and he may be kicked out at any time with no other place to go." Because of his unstable living environment, the counselor recommended he attend intensive inpatient treatment. But William never attended. At a second substance-abuse evaluation in August, William admitted to still using methamphetamines daily. Despite receiving the same diagnosis and recommendation as before, he again did not attend inpatient treatment.

In early September, the court adopted a permanency plan that described what William needed to do for the children to return to his care. The plan reiterated the need for inpatient treatment and therapy and required William to work with Family Safety, Risk, and Permanency (FSRP) services. The DHS allowed William to have visitations with the children twice a week under its supervision. The court held a review hearing in late October, where William admitted he had not started treatment yet. In November, the children's uncle informed the court he could no longer care for A.K. and Am.K. The court subsequently placed the children in foster care, where they have since remained.

At the permanency hearing in January 2020, William asked for a six-month extension to work toward reunification. He reported he was attending inpatient

treatment at that time but provided no evidence of his admission. William had not spoken with anyone from the DHS about using its services since the October hearing. The court found no evidence that William was willing or able to address his substance-abuse issues and ordered the State to file a petition to terminate parental rights. At the termination hearing in June, the court terminated William's parental rights under Iowa Code section 232.116(1), paragraphs (e), (h), and (*l*) (2019).[3] William appeals.

## II. Analysis

### A. Grounds for Termination

When the juvenile court relies on more than one statutory ground, we may affirm the termination order if we find clear and convincing evidence to support any ground. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Because the State limits its briefing to Iowa Code section 232.116(1)(h), we will focus our analysis on that provision.

Section 232.116(1)(h) allows termination of parental rights if the court determines that the State proved the following elements:

> 1. The child is three years of age or younger.
> 2. The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> 3. The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> 4. There is clear and convincing evidence that the child cannot be returned to custody of the child's parents as provided in section 232.102 at the present time.

---

[3] Unlike the mother, William did not consent to termination at the June hearing. But he offered no evidence to contest the termination and did not object to the State presenting its case without live witnesses. William's counsel rested on "a general denial and sufficiency of the evidence position."

William contests only the fourth element, arguing that the State failed to offer sufficient proof that the children could not be returned to his care. Opposing the State's proof, he suggests the evidence reflects his ability to "appropriately parent."

William contrasts his case with *In re M.W.*, 876 N.W.2d 212, 223–24 (Iowa 2017), asserting that termination is inappropriate because his actions are not as serious as the parent's deficiencies in that case. We disagree. In *M.W.*, our supreme court found clear and convincing evidence that it was unsafe for the children to return to the mother's custody because there were continuing concerns about the mother's ability to support herself and the children. *See* 876 N.W.2d at 223–24 . For nearly a year, the mother provided little to no financial support for the children, had unstable housing, lacked employment, and showed no interest during visitations. *See id.* Relying on statements made by the mental-health professionals and caseworkers, the court noted the mother's lack of interest in addressing the children's needs and her resistance to change. *Id.* at 224. We share these same concerns about William.

William has been addicted to methamphetamine for over a decade.[4] Despite repeated efforts by the DHS, William ignored court-ordered services designed to address his substance-abuse and mental-health issues. Although he claims he began treatment for his addiction, he provided no evidence to showcase his progress. Even if it were true, he would have been in treatment for only two weeks before the January permanency hearing. By then, the children had been

---

[4] William reported using methamphetamine daily since he was twenty years old. At the time of his August substance-abuse evaluation, William was thirty-one years old and still admitting to daily use.

removed from his care for over six months. Besides that two-week period, William cannot point to any evidence that shows he addressed his addiction within the past year. Like the juvenile court, we find that William's unresolved substance-use disorder and mental-health issues posed an ongoing danger to himself and his children at the time of the termination hearing. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (defining "present time" under section 232.116(1)(h) as time of termination hearing).

William argues that his recent visits with A.K. and Am.K. reflect his ability to care for them. But the record controverts this argument. Our review of the FSRP reports reveals several significant concerns. Between January and May 2020, William missed a number of visitations without apparent reason. Although he did attend four supervised visits within the past six months, his inconsistent actions raise doubts about his commitment to satisfying the children's needs. Also concerning are the statements made by the FSRP worker, who noted that William often relied on the foster home to feed the children rather than bring them food during visitations. In the most recent May report, the FSRP worker expressed concerns about William's lack of employment, lack of transportation, and unstable living environment with other drug users. A FSRP report from August 2019 listed those same concerns, which shows William's circumstances are unchanged.

Given the serious, ongoing issues concerning William's unaddressed substance abuse and his lack of a safe and permanent home, we find clear and convincing evidence that A.K. and Am.K. could not have been safely returned to his care. Based on our de novo review of the record, we affirm the juvenile court's determination under section 232.116(1)(h).

**B. Best Interests of the Children**

We must next consider whether termination is in the best interests of the children. *A.S.*, 906 N.W.2d at 473. In determining the children's best interests, we use the factors described in Iowa Code section 232.116(2). *Id.* Under this statutory framework, we give primary consideration to the children's safety and their physical, mental, and emotional needs. *Id.* at 474. We look at both the children's long-range and immediate interests. *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). We also consider whether "the parent's ability to provide [for] the needs of the child[ren] is affected by the parent's mental capacity or mental condition." *In re D.W.*, 791 N.W.2d 703, 708 (Iowa 2010) (quoting Iowa Code § 232.116(2)(a)).

William argues termination is not in the children's best interests because they had been in foster care for "only" seven months and the State offered no evidence he presented a danger to them. He challenges the timing of termination, contending the juvenile court could not have accurately determined the needs of the children and his ability to care for them within that period.

Contrary to his argument, our supreme court has emphasized the need to abide by the six-month statutory timeframe. *A.S.*, 906 N.W.2d at 474 (citing Iowa Code § 232.116(1)(h)). While William points to the period that the children were in foster care, the DHS has been involved since May 2019. The court gave William over one year to address his mental-health and substance-abuse issues that threatened the children's safety. The DHS repeatedly offered him services, and still, the record contains little to no evidence of his progress. William's inconsistent visitations with Am.K. and A.K. also weigh against him, as it casts doubt on his

ability to provide for their basic needs. And the FSRP reports from January to May show William has not been able to obtain stable housing or employment. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112 (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)).

Given William's continuing resistance to treatment, his inconsistent visitations, and his job and housing instability, we find the children would not be any safer in his care at the time of the termination hearing than when they were removed in May 2019. Am.K. and A.K. have been living in a foster home since November 2019, where their needs are being met. According to the FSRP worker, "they like their foster home" and continue to make substantial learning developments. After considering the children's safety and need for a permanent home, we agree with the juvenile court that termination is in the children's best interests.

**AFFIRMED.**